UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

FILED
98 MAY -8 PM 1:46
U.S. DIST. COURT
N.D. OF ALABAMA

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
    Plaintiff; )
     )    No. CV-96-P-3108-S
-vs.- )
     )
FEDERAL EXPRESS CORPORATION, )
    Defendant.

ENTERED
MAY 0 8 1998

## OPINION

The Defendant's Motion for Summary Judgment and the Plaintiff's Cross Motion for Partial Summary Judgment were considered at a hearing in chambers on February 4, 1998. For the reasons discussed below, the Defendant's motion is due to be granted and the Plaintiff's motion is moot.

### Facts[1]

The Complainant, Katherine Dickens, was a courier for Federal Express at its Homewood, Alabama station. On March 3, 1992, Dickens suffered a back injury that resulted in her being placed on a medical leave of absence on instructions from her doctor. On June 22, 1992, her doctor released her to work with restrictions on bending, stooping, and lifting. She then worked for three weeks on a temporary assignment. On or about September 1, 1992, Dickens' doctor determined that she had reached maximum medical improvement and assigned her permanent restrictions on lifting over 25 pounds and excessive bending or stooping. These restrictions prevented Dickens from returning to her former courier position, because she could no longer

---

1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.



perform its essential functions. On September 8, 1992, Dickens was informed that she would be extended certain accommodations to assist her return to work. Specifically, she was given 90 days in which she could apply for any vacant position with Federal Express for which she met the qualifications and could perform the essential functions. Federal Express also provided her with access to the Career Opportunities bulletin, a weekly comprehensive listing of all open positions with Federal Express nationwide. In light of her situation, Dickens was given permission to submit an unlimited number of Job Change Applications, rather than the maximum of two that are permitted under ordinary circumstances. Dickens was also to be given preferential hiring into any position in Federal Express' ground operations, for which she was qualified, that was lateral to, or lower than, her former courier job. Finally, Federal Express' Human Capital management Committee was available to assist Dickens and to consider any request for accommodation she may have made. Dickens' employment was only to be terminated if she failed to obtain a suitable position with Federal Express through these accommodations. Due to the nature of the Defendant's business, only a limited number of non-management positions were available in the Birmingham area that did not require heavy lifting. With the exception of dispatchers, all non-management employees in Birmingham are required to be able to lift 75 pounds.

During the 90 day period, Dickens applied for two open dispatcher positions at the Birmingham station. The dispatcher position involves more responsibility and greater pay than Dickens' position as a courier. While dispatcher is also a non-management position, it is considered a promotion by the managers in charge of making the hiring decision. Dickens participated in a competitive job interview process for both positions. According to the interviewers, Dickens performed poorly in the interviews, which used a standardized set of

2

questions to rate applicants, and was not offered the position. Dickens did not apply for any other position during the 90 day period. On December 8, 1992, after the expiration of the 90 day period, Dickens was terminated.

Dickens then filed a worker's compensation lawsuit which was settled pursuant to a court approved written settlement agreement dated May 9, 1995. The settlement agreement stated that it "concludes all worker's compensation and other claims which the Plaintiff has for any injuries or damages sustained while working with the Defendant through the date of this order."

## Analysis

The Defendant's and the Plaintiff's motions both seek summary judgment on the issue of whether the Plaintiff's worker's compensation settlement bars recovery in the instant action. The worker's compensation settlement contains a general reference to "other claims" that is not specific enough to indicate that it was intended or understood by the parties to refer to discrimination claims in addition to bodily injury claims. Because there is no other evidence from which a finder of fact could reasonably conclude that the May 1995 agreement was a knowing and voluntary waiver by Dickens of her right to sue for employment discrimination, the Defendant's motion is due to be denied on the issue of the release of claims. The Plaintiff's motion would have been granted on this issue, if it were not mooted by the disposition of the rest of the Defendant's motion.

Both motions also seek summary judgment on the issue of whether the Plaintiff was actually disabled under the ADA. Because there is a genuine dispute of fact regarding whether the Plaintiff had an impairment that substantially limited one or more of her major life activities,

both motions are due to be denied on the issue of disability.

The Defendants have also moved for summary judgment on the ground that their accommodation efforts were reasonable as a matter of law. The ADA only prohibits discrimination against disabled persons who, with or without reasonable accommodation, can perform the essential functions of the employment position they held or sought. 42 U.S.C. §§ 12111 and 12112. Since it is undisputed that Dickens was unable to perform the essential functions of the courier position she held without accommodation, the essence of the Plaintiff's ADA claim is that Dickens was denied a reasonable accommodation that would have allowed her to work for the Defendant within the limits of her disability.

The Defendant's accommodation efforts consisted of the following: 1) allowing her 90 days to apply for any vacant position with Federal Express for which she was qualified; 2) providing her with access to a weekly comprehensive listing of all open positions; 3) giving her permission to submit an unlimited number of Job Change Applications; 4) giving her preferential hiring into any position in Federal Express' ground operations, for which she qualified, that was lateral to, or lower than, her former courier job; and 5) making Federal Express' Human Capital Management Committee available to consider any request for accommodation she may have made.

The court finds that in light of the undisputed facts and circumstances, these accommodation efforts were reasonable as a matter of law. While reassignment to a vacant position is specifically included in the ADA as a form of accommodation, the duty to allow a transfer to another position is limited by the bounds reasonableness. 42 U.S.C. § 12111(9). Although the boundaries of "reasonable accommodation" are not well settled, it is clear that an employer is not *required* to promote or create a new position in order to reasonably accommodate

4

a disabled employee. *See*, 42 U.S.C. § 12111(9)(B); 29 C.F.R. app. § 1630.2(o); *Milton v. Scrivener*, 53 F.3d 1118, 1125 (10th Cir. 1995)(no duty to promote) and, *McCollough v. Atlanta Beverage Co.*, 929 F.Supp. 1489, 1503 (N.D. Ga. 1996); *Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488 (M.D. Ala. 1994) (no duty to create new job or light-duty position). The Defendants argue that these cases, and the terms of the statute itself, establish that these two categories of accommodation transfer are per se unreasonable in all cases. The court agrees with this interpretation but bases its holding on this ground only in part because the court also recognizes that the law here is not well settled. While it is certain that at a minimum, the statute does not create an absolute duty to promote or create a new position, arguably, under the law as it now stands, without authoritative interpretation by the Supreme Court or 11th Circuit, such extreme efforts may be found "reasonable" in certain rare case. Thus, as an alternative and independent ground for its decision, the court finds that under these facts, there was no duty to provide a promotion or create a new job as an accommodation because in this case, no reasonable jury could find that such efforts would have been reasonable. Stated affirmatively, the court finds that under these facts, this employer's duty to accommodate through transfer to another position only required them to allow a requested transfer to other existing positions of equal or lesser status for which the disabled employee remained qualified.

Dickens contends that the Defendant should have accommodated her by allowing her to become a dispatcher.[2/] If the dispatcher position was not a promotion, then Federal Express may

---

2. Contrary to their initial allegations, the Plaintiff has produced no evidence that the Defendant discriminated against Dickens on the basis if her disability in deciding not to give her a dispatcher position. In other words, there no evidence that her inability to lift was in any way the basis of that decision.

5

have been obligated under the ADA to allow Dickens, upon her application, to transfer into that position since she was otherwise capable of performing its duties within her lifting restrictions. However, the undisputed evidence supports the conclusion that the dispatcher position would have been a promotion from Dickens' job as a courier. The dispatch managers who interviewed Dickens and were responsible for making the selection decision both testified that they considered it a promotion from the courier position. Their undisputed testimony also establishes that the dispatcher position involved more pay and greater responsibility than the courier position. This is the very definition of a promotion. Dickens did not know whether or not dispatcher was considered a promotion. The Plaintiff now asserts that because some couriers become managers without first being a dispatcher, some dispatchers come from outside the ranks of courier, and because Dickens was not told that it was a promotion, that there is a genuine dispute of this material fact that defeats summary judgment and warrants further discovery. The court disagrees. These facts are not inconsistent with the unambiguous testimony offered by the dispatch managers. The Complainant's mere uncertainty is not enough to create a dispute of fact. Because dispatcher was a promotion from courier, Dickens' alleged disability did not entitle her to the position, and the Defendant's decision not to promote her was not a violation of the ADA in the absence of any evidence of actual disability-based discriminatory motive.

The Plaintiff next argues that the Defendant should have allowed Dickens to be transferred to one of several other positions that she was qualified for, that would not have involved a promotion. The Plaintiff asserts that Dickens should have been given a position as either a light-duty letter courier, a Customer Service Agent, a Safety Assurance Leader, or a position in Federal Express' management training program, "LEAP". Generally, in order to have a claim for

6

discriminatory failure to hire, an employee must actually apply for the position at issue. *Wagner v. G.A. Gray Co.*, 872 F.2d 142, 145-46 (6th Cir. 1989)(discussing discrimination in the ADEA context). Specifically, to make a claim for discrimination under the ADA based on the failure to accommodate by transfer, the Plaintiff bears the burden of showing that the Complainant actually requested a specific transfer to an existing vacant position. *See, Cheatwood v. Roanoke Indus.*, 891 F.Supp. 1528 (N.D. Ala. 1995)(holding that complainant bears burden of showing request for accommodation) and discussion of duty to create new position *infra* page 5.

It is undisputed that Dickens did not apply for any position other than dispatcher after her injury, nor did she suggest any other form of accommodation that would have permitted her to perform the essential functions of any suitable position. The alleged failure to provide Dickens with any one of these other positions cannot form the basis of an ADA violation because it is undisputed that Dickens did not submit an application for any of them. It is also undisputed that Dickens failed to make a request for accommodation within one of the these proposed positions. Additionally, these alleged accommodations cannot form the basis of a claim for failure to accommodate because it is undisputed that none of them were existing full-time non-lifting positions. Specifically, the light duty letter carrier, LEAP program, and Safety Assurance Leader positions, were not in fact existing full-time positions at Federal Express. There is simply no such position as a light duty courier. The LEAP program and the Safety Assurance Leader are not independent full time jobs, but rather opportunities for responsibilities in addition to ones' job as a regular full-time courier. Finally, the Customer Service position has a 75 pound lifting requirement. In short, all of these suggested accommodations, for several independent reasons, exceeded the Defendant's duty to provide reasonable accommodation.

7

## Conclusion

The Defendant's duty to accommodate by reassignment only extended to existing equivalent positions in which a vacancy existed. It is undisputed that Dickens was not deprived of any such opportunity. Thus, the Defendant's accommodations, in light of the undisputed facts, were reasonable as a matter of law and there was no unlawful discriminatory failure to accommodate. Accordingly, the Defendant's motion is due to be granted on this issue and this action is due to be dismissed. The Plaintiff's motions for summary judgment and additional discovery are now moot.

Dated: May _8_, 1998

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
    William H. King, III
    Warwick F.M. Spencer
    Michael J. Frazier
    Eunice Holt Morrow